IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERWYN STONE JR., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 23-761 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA; | : | |
| PHILADELPHIA DEPT. OF PRISONS | : | |
| f/k/a PHILADELPHIA PRISON SYSTEM; | : | |
| BLANCHE CARNEY, Commissioner of | : | |
| the Philadelphia Department of Prisons; | : | |
| MAJOR VETTER; SGT. RODRIGUEZ; | : | |
| SGT. BLACK; C/O ROSA; C/O KILSON; | : | |
| C/O BUTLER; C/O GRIFFIN; and | : | |
| C/O BOONE, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                                                                                                   April 27, 2023

      The *pro se* plaintiff has filed an application for leave to proceed *in forma pauperis* and a complaint in which he asserts claims under 42 U.S.C. § 1983 against a city, the city's department of prisons, the commissioner of the department of prisons, and eight individuals working in the prisons for alleged constitutional violations relating to his being placed in administrative segregation for approximately four months from December 2022 until March 2023. The plaintiff alleges that the defendants did not follow proper procedure before placing him in administrative segregation and that the conditions of his confinement there were inhumane.

      As discussed below, although the court will grant the plaintiff leave to proceed *in forma pauperis*, the court will dismiss the operative complaint because the plaintiff has failed to state a plausible section 1983 claim against any defendant. Regarding this dismissal, the court will dismiss with prejudice any section 1983 claims against the city's department of prisons because it does not

have an existence apart from the city itself. As for the other defendants, the court will dismiss without prejudice any section 1983 claims against (1) the city because the plaintiff has failed to include any allegations that would plausibly allege municipal liability against it, (2) the commissioner because the plaintiff has not included any allegations that would establish supervisory liability against her, and (3) the eight prison employees because the plaintiff failed to plead any facts about how they were personally involved in any constitutional violations. The court will grant the plaintiff leave to amend his operative complaint should he be able to fix the deficiencies in his claims that the court is dismissing without prejudice.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Berwyn Stone ("Stone"), commenced this action by submitting what appeared to be copies of prison grievance forms to the clerk of court, which the clerk docketed as a complaint in this case on February 24, 2023. *See* Doc. No. 1. On March 3, 2023, this court entered an order informing Stone that if he sought to proceed with a civil action, he needed to (1) file a proper complaint in accordance with Federal Rule of Civil Procedure 3 and (2) either pay the fees to commence a civil action or seek leave to proceed *in forma pauperis*. *See* Doc. No. 3. In response to this order, Stone filed an application for leave to proceed *in forma pauperis*, prisoner trust fund account statement, and amended complaint, all which the clerk of court docketed on April 3, 2023.[1] *See* Doc. Nos. 4–6.

In the amended complaint, Stone asserts claims for constitutional violations under 42 U.S.C. § 1983 against the following defendants: (1) the City of Philadelphia (the "City"); (2) the

---

[1] The amended complaint became the governing pleading in this case upon its filing. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading." (internal citations omitted)); *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (per curiam) (holding that "liberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings").

Philadelphia Department of Prisons ("PDP"); (3) Blanche Carney, Commissioner of the PDP ("Commissioner Carney"); (4) Major Vetter; (5) Sgt. Rodriguez; (6) Sgt. Black; (7) C/O Rosa; (8) C/O Kilson; (9) C/O Butler; (10) C/O Griffin; and (11) C/O Boone. *See* Am. Compl. at ECF pp. 2–3, Doc. No. 5. As for the events giving rise to his section 1983 claims against these defendants, Stone alleges that they took place at two facilities managed by PDP—the Philadelphia Industrial Corrections Center and the Riverside Correctional Facility—covering the period from December 1, 2022 to March 24, 2023. *See id.* at ECF p. 4.

Stone alleges that on December 1, 2022, he was taken to "'the hole,' which is a segregation block for inmates removed from general population for punitive or administrative purposes, without a written or verbal explanation." *Id.* He alleges his placement in "the hole" was contrary to PDP policy, which he claims requires a "write-up" for "any incident that forms the basis for removing an inmate from general population for violation of rules." *Id.* Stone also alleges that PDP policy requires a disciplinary hearing within seven days of an incident involving a violation of prison rules, and that he received no such hearing in this case. *See id.* Stone avers that he was placed in "the hole" until March 24, 2023 and that, although he filed grievances to address the situation, he did not receive a response from prison officials. *See id.*

In addition to complaining about the failure the follow the proper procedures before placing him in "the hole," Stone challenges the conditions in which he was confined during this time. Stone characterizes his placement in "the hole" on December 1, 2022, as being placed "in solitary confinement . . . in non-working in-opt cells where the conditions [were] inhumane." *Id.* at ECF p. 7. Stone asserts that he was first held on Unit F1 in cell 39 in a cell with no working lights and "bad" plumbing. *Id.* While it is unclear how long Stone remained in this cell, at some point he was moved to E Unit and placed in a cell with similar conditions. *See id.* Stone claims that "as a way

3

to control [him, his] air condition was left on 24/7" making it "so cold" that he was unable to pray. *Id.* He also claims that the conditions on the unit were "so bad" that he and other inmates were moved to another jail so that work could be done on the cells in E Unit. *Id.*

Due to his placement in "the hole" and the "inhumane conditions" he experienced there, Stone alleges that he began to experience mental health issues, for which he was prescribed medication. *See id.* at ECF p. 5. For relief, Stone seeks (1) "[$3,500] a day from December 7th 2022 until March 24th 2023," (2) "[$1,000] a day for being kept in solitary confinement with [sic] no reason," (3) [$1,000] a day for being placed in non[-]working in-opt cells," and (4) "[$1,500] a day for suffering mentally." *Id.*

## II. DISCUSSION

### A. The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

4

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Stone is unable to prepay the fees to commence this civil action. Therefore, the court will grant him leave to proceed *in forma pauperis*.[2]

**B.      Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915**

Because the court has granted Stone leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490

---

[2] As Stone is a prisoner, he must fully pay the filing fee in installments due to the Prison Litigation Reform Act ("PLRA"). *See* 28 U.S.C. § 1915(b).

U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, No. 20-2554, 2021 WL 3891552, at *5 (3d Cir. Sept. 1, 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se

filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### C.     Analysis

Stone asserts claims for constitutional violations against the defendants pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court.[3] Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

---

[3] Concerning Stone's constitutional claims, Stone references the Fourth, Fifth, Eighth, and Fourteenth Amendments as the bases for his claims. *See* Am. Compl. at ECF p. 3. Although Stone mentions the Fourth and Fifth Amendments, his factual allegations do not raise any plausible constitutional claims under either Amendment. In addition, since it is unclear from the amended complaint whether Stone was a pretrial detainee or a convicted and sentenced inmate at the time of the events giving rise to his claims, it is also unclear whether the Eighth or Fourteenth Amendment applies to his conditions-of-confinement claims. This distinction has some significance insofar as the Fourteenth Amendment applies to claims by pretrial detainees, and the Eighth Amendment applies to claims by individuals incarcerated "after sentence and conviction." *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 n.5 (3d Cir. 2003) (explaining that Due Process Clause of Fourteenth Amendment "provides at a minimum, no less protection, than is provided by the Eighth Amendment," but indicating that court was not "decid[ing] whether the Due Process Clause provides additional protections to pretrial detainees beyond those provided by the Eighth Amendment to convicted prisoners" (citations and internal quotation marks omitted)).

> thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

### 1. Claims Against the PDP

Although Stone names the PDP as a defendant in this case, this claim is implausible because the City's agencies, such as the PDP, are not "persons" under section 1983 insofar as they do not have a separate legal existence apart from the City itself. *See Russell v. City of Philadelphia*, 428 F. App'x 174, 177 (3d Cir. 2011) (per curiam) ("[T]he Philadelphia Prison System, [a] department[] of the City of Philadelphia itself, [is] not a proper defendant[]" in an action brought under section 1983." (citing 53 P.S. § 16257 and *Bey v. City of Philadelphia*, 6 F. Supp. 2d 422, 423 (E.D. Pa. 1998))); *Durham v. Philadelphia Prison Sys.*, Civ. A. No. 18-2113, 2018 WL 3105589, at *2 (E.D. Pa. June 25, 2018) ("Philadelphia Prison System is not an entity that is subject to suit separate from the City of Philadelphia." (citing 53 P.S. § 16257)); *Vurimindi v. City of Philadelphia*, Civ. A. No. 10-88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (concluding that plaintiff could not maintain section 1983 claims against City of Philadelphia agencies because under 53 P.S. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia"); *see also Vangjeli v. City of Phila*, Civ. A. No. 15-1566, 2015 WL 5793926,

at *3 (E.D. Pa. Sept. 30, 2015) (dismissing section 1983 claim against Free Library of Philadelphia because it was not entity subject to suit since no department or agency of City of Philadelphia has separate corporate existence from City), *aff'd sub nom. Vangjeli v. City of Philadelphia*, 655 F. App'x 132 (3d Cir. 2016) (per curiam); *Bush v. City of Philadelphia Police Dep't*, 684 F. Supp. 2d 634, 636 (E.D. Pa. 2010) (dismissing Philadelphia Police Department as matter of law because it is not legal entity separate from City of Philadelphia). Because the PDP is not considered a "person" for purposes of section 1983, Stone's claim against it is implausible, and the court will dismiss the claim with prejudice. *See White v. City of Philadelphia*, Civ. A. No. 21-CV-2688, 2021 WL 4169424, at *3, 6 (E.D. Pa. Sept. 14, 2021) (dismissing section 1983 claims against PDP with prejudice).

### 2. Claims Against the City

Stone has also named the City as a defendant. To assert plausible claims against the City, Stone must allege that it has a policy or custom which caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Thus, Stone "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).

A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "'Custom,

on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (internal quotation marks and alterations omitted). Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz*, 915 F.2d at 850 (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

> In addition,
>
> [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg*, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e]

that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale*, 318 F.3d at 584 (alterations in original) (internal footnote omitted).

Here, Stone has not identified a policy or custom of the City that caused the constitutional violations of which he complains. Despite not identifying a policy or a custom, Stone could still proceed on his municipal liability claim if he plausibly pleaded that the City lacked policies or failed to train its employees, and that the lack of policies or failure to train was a moving force in the violations of his constitutional rights. *See Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) ("Municipal liability can be predicated on a failure to train." (citing *City of Canton v. Harris*, 489 U.S. 378 (1979))); *Caiby v. Haidle*, Civ. No. 3:18-cv-1120, 2022 WL 2987908, at *10 (M.D. Pa. July 27, 2022) ("To successfully set forth a § 1983 claim against [the] County, [the plaintiff] must raise a *Monell* claim alleging that the County is a governmental entity and thus a 'person' under § 1983, and must allege that either a policy, ***or lack of policy***, of the County led to the violation of his constitutional rights." (emphasis added) (citing *Monell*, 436 U.S. at 658)); *see also Natale*, 318 F.3d at 585 (indicating that "[a] reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs"). In failure-to-train cases,

> a municipality is only liable for failing to train when that "failure amounts to 'deliberate indifference to the [constitutional] rights of persons with whom the police come in contact.'" [*Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1028 (3d Cir. 1991 ("*Colburn II*")] (quoting *City of Canton*, 489 U.S. at 388, 109 S.Ct. 1197).
>
>> Only where a municipality's failure to train its employees in relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.... Only where a failure to train reflects a "deliberate" or "conscious" choice by a

11

> municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.
>
> *City of Canton*, 489 U.S. at 389, 109 S.Ct. 1197. Therefore, not all failures or lapses in training will support liability under § 1983. Moreover, "'the identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'" *Colburn II*, 946 F.2d at 1028 (quoting *City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197). In *City of Canton*, the Court stressed that a plaintiff asserting a failure to train theory is "required to prove that the deficiency in training actually caused [the constitutional violation, i.e.,] the [police custodian's] indifference to her medical needs." *City of Canton*, at 391, 109 S.Ct. 1197.

*Woloszyn*, 396 F.3d at 324–25 (all alterations except second alteration in original).

As with a section 1983 municipal liability claim based upon a policy or custom, Stone has not included any allegations in the amended complaint that would qualify as a plausible section 1983 failure-to-train claim. Instead, Stone appears to be alleging that the City's policies were not complied with when placing him in segregation and holding him there for several months. Accordingly, Stone has failed to state a plausible section 1983 claim against the City.

### 3. Claims Against Individual Defendants

Stone's remaining claims in the amended complaint are against Commissioner Carney and eight prison officials. As for the eight prison officials, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Here, Stone has failed to include any allegation as to how these eight defendants were involved in his alleged constitutional violations. As such, he has failed to plead plausible section 1983 claims against them.

Concerning Commissioner Carney, if a section 1983 plaintiff seeks to hold a supervisor such as Commissioner Carney liable for the unconstitutional acts by subordinates, there are two theories of supervisory liability: (1) "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences,

12

established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and (2) "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *see Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).

As with his claims against the other eight individual defendants, Stone fails to describe how Commissioner Carney was involved in violating his constitutional rights in connection with his placement in "the hole" and the conditions in which he was confined. In addition, he has failed to allege that Commissioner Carney, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused his alleged constitutional violations. Therefore, he has failed to state a plausible section 1983 claim for supervisory liability against Commissioner Carney.

Overall, other than identifying Commissioner Carney and the other eight individual defendants in the caption, Stone does not discuss them in the amended complaint. Without

allegations about what these defendants did or did not do to cause the constitutional violations of which Stone complains, he cannot state a plausible claim against them. *See Iqbal*, 556 U.S. at 677 ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.").

### III.   CONCLUSION

For the forgoing reasons, the court will dismiss the amended complaint. The court will dismiss Stone's claims against PDP with prejudice because the defects in these claims cannot be cured. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (concluding that PLRA "did not alter our preexisting rule that *in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) (explaining that "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile"). The court will also dismiss the remainder of the amended complaint without prejudice to Stone filing a second amended complaint so he can "flesh out [his] allegations by . . . explaining in a [second] amended complaint the 'who, what, where, when and why' of [his] claim." *Gambrell v. S. Brunswick Bd. of Educ.*, Civ. A. No. 18-cv-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019).

The court will enter a separate order.[4]

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[4] This order will provide additional instruction for the plaintiff about filing a second amended complaint.